CHEHARDY, C.J.
Plaintiffs, Double NRJ Trucking, Inc. and Ramesh Ramsarup, appeal the district court's June 20, 2017 judgment denying with prejudice plaintiffs' petition for cancellation of lease and return of vehicle. After our de novo review, we affirm this judgment.
FACTUAL AND PROCEDURAL HISTORY
On April 28, 2017, plaintiffs filed a "Petition for Cancellation of Lease and Return of Vehicle," in which they asserted that because defendant, Michael G. Johnson, failed to make timely payments in accordance with the parties' agreement, they elected to dissolve the lease pursuant to La. C.C. art. 2704 and demand return of the vehicle. The court issued a rule to show cause order that was set for hearing on May 25, 2017. Having not been served with plaintiffs' petition or the show cause order, on May 9, 2017, defendant filed a petition for a declaratory judgment in another division of 24th Judicial District Court.[1] Once defendant was served with plaintiffs' petition and the show cause order, on May 19, 2017, he pled the dilatory exception of unauthorized use of a summary proceeding, arguing that summary procedure was not proper for resolution of the instant dispute pursuant to La. C.C.P. art. 2592. At the show cause hearing on May 25, 2017, the district court overruled this exception and the matter proceeded to a bench trial.
Introduced into evidence was an agreement signed by Mr. Johnson, as "BUYER," and Mr. Ramsarup, as "OWNER," in the presence of two witnesses and a notary. It appears to be dated May 9, 2015[2] and provided:
*1128 This agreement is between Hemwatie and Ramesh Ramsarup and Michael G. Johnson[.] Michael G. Johnson agree[s] to lease to own this 2006 PTRB VIN# 2NPLLZOX16M891894 from Hemwatie and Ramesh Ramsarup[.] Michael G. Johnson agree[s] to pay $1056.00 a week includ[ing] ins[urance] for 192 weeks[.] Michael G. Johnson also agree[s] to fully maintain the truck until all payment is made in full.
Also introduced into evidence was a payment agreement signed by Mr. Johnson, as "BUYER," and Mr. Ramsarup, as "OWNER," in the presence of one witness that provided: "This payment agreement is between Hemwatie and Ramesh Ramsarup and Michael G. Johnson[.] Starting on April 6, 2015 $1056.00 is due on every Monday of the week for 192 weeks until all payment is made in full."
Mr. Johnson, and his wife, Michelle McFarland, both testified that at the time of the agreement they believed Mr. Johnson was buying the truck from Mr. Ramsarup for $70,000, for which he would make 92 weekly payments with a 20% interest rate. Mr. Johnson explained he believed he would obtain the title when the $70,000 had been paid. Mr. Johnson further added that when he signed the agreement, he pointed out to Mr. Ramsarup the inclusion of 192 weeks, instead of the 92 weeks he believed was their agreement. According to Mr. Johnson, Mr. Ramsarup assured him that once the $70,000 had been paid, he would turn over the title.
Ms. McFarland, who handled the financial side of her husband's trucking business, testified that they had initially agreed upon the weekly payment of $1,056, but that shortly thereafter, Mr. Ramsarup tacked on an additional $100 to cover insurance, for a total of $1,156 per week. Ms. McFarland added that she understood $829.08 was for the principal and interest, and $326.92 was for insurance.
Ms. McFarland additionally testified that in her and her husband's efforts to procure more affordable insurance, she obtained a "bill of sale" from plaintiffs on March 28, 2016. This document, which was introduced into evidence, provided: "Michael Johnson is leasing to own this 2006 PTRB VIN# 2NPLLZOX16M891894[.] Sale price is $70,000 and he have 192 payment[s] of $829.08 weekly[.] For the 2015 year he made payment of $33,992.28 and insurance payment of $326.92 weekly." Thereafter, on or about May 23, 2016, Mr. Johnson obtained his own insurance policy on the truck, and continued making weekly payments of $829.08 to plaintiffs.
Mr. Johnson added that some time after the agreement had been signed, Mr. Ramsarup contacted him and imposed a 20% annual interest rate on their agreement. To cover this increased cost, Mr. Johnson and Ms. McFarland both explained that they made 105 payments. They introduced into evidence a log of 105 payments Mr. Johnson made to Mr. Ramsarup via Chase QuickPay, each in the amount of $829.08, from April 7, 2015 until April 10, 2017.
Mr. Ramsarup offered differing testimony. He testified that he believed the agreement was for Mr. Johnson to pay $829.08 for 192 weeks. He further stated that upon *1129 completion of these payments, he would sign the title over to Mr. Johnson.
Mr. Johnson explained he made his last payment, his 105th, on April 10, 2017. With no payment forthcoming on April 17, 2017, Mr. Ramsarup cancelled the license plate on the truck, rendering it practically inoperable. Thereafter, in a letter dated April 20, 2017, counsel for plaintiffs notified Mr. Johnson that because of his failure to make the weekly payment due on April 17, 2017, "the lease of above-referenced vehicle is terminated and the vehicle should be returned[.]" When Mr. Johnson failed to return the truck, plaintiffs filed their petition to cancel the lease on April 28, 2017.
At the conclusion of the trial on May 25, 2017, the court ruled from the bench: "The Court is going to find genuine issues of material fact regarding the terms of the contract. The contract had been altered apparently orally at some point in time and not reduced to writing. The Court is going to deny the petition for cancellation of lease and return of the lease vehicle."
In its written judgment that followed on June 20, 2017, the court, again noting that "issues of fact exist as to the agreement between the parties," denied plaintiffs' petition with prejudice. Thereafter, pursuant to a request from plaintiffs, the court issued reasons for its judgment on August 16, 2017. The court explained that it found Mr. Ramsarup agreed to sell the vehicle to Mr. Johnson for $70,000 and the parties executed a "lease to own" agreement, wherein the $1,056 weekly payments represented principal and interest in the amount of $829.08, plus insurance. The court found more credible Mr. Johnson's testimony that the parties agreed to 92 payments; and the court determined "[t]he documents prepared by Mr. Ramsarup either fraudulently or erroneously reflected 192 weekly payments." The court also noted: "[T]he Court believes it is substantially likely that Mr. Ramsarup entered into this 'lease to own' agreement with the intent to defraud Mr. Johnson." "At the very least, the inclusion of '192' week term was an error that the parties later acknowledged and agreed to modify. The Court therefore denied the plaintiffs' petition."
Plaintiffs moved for a new trial, which was denied on September 19, 2017, and thereafter devolutively appealed.
ISSUES ON APPEAL
In their brief to this Court, plaintiffs assign the following errors:
(1) The district court erred in finding material issues of fact after a bench trial on the merits.
(2) The district court erred in dismissing the matter with prejudice after finding material issues of fact after a bench trial on the merits.
(3) The district court erred in examining extrinsic evidence to interpret an authentic act.
(4) The district court erred in failing to determine that the parties did not agree to 192 payments, where both plaintiffs' and defendant's exhibits at trial all indicate 192 payments.
(5) The district court erred in finding in its written reasons for judgment that the parties agreed to 92 payments, where defendant already made 105 payments and testified that he intended to make more payments.
(6) The district court erred in citing fraud by the plaintiff in its written reasons for judgment where fraud was never alleged, nor was it ever mentioned at trial.
(7) The district court erred in citing the value of the vehicle at issue in its written reasons for judgment, where no evidence, testimony, or *1130 discussion of the value of the vehicle.
(8) The district court erred in denying plaintiffs' motion for new trial, or alternatively, motion to amend judgment, where the judgment was contrary to the law and evidence.
DISCUSSION
We opt not to address plaintiffs' assignments of error seriatim because our following analysis disposes of all the assignments, either on their merits or renders them moot.
We begin with our determination that the May 9, 2015 agreement is void for defect of form. "An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed." La. C.C. Art. 1833. "A material deviation from the manner of execution prescribed by the codal article governing authentic acts will be fatal to the act which purports on its face to be authentic." Eschete v. Eschete , 12-2059 (La. App. 1 Cir. 2/27/14), 142 So.3d 985, 987 ; Hardin v. Williams , 468 So.2d 1302, 1304 (La. App. 1 Cir. 1985), aff'd , 478 So.2d 1214 (La. 1985). Nevertheless, "[a]n act that fails to be authentic because of the lack of competence or capacity of the notary public, or because of a defect of form, may still be valid as an act under private signature." La. C.C. Art. 1834. "An act under private signature need not be written by the parties, but must be signed by them." La. C.C. Art. 1837.
The first sentence of the May 9, 2015 agreement states: "This agreement is between Hemwatie and Ramesh Ramsarup and Michael G. Johnson." The agreement is not signed by Hemwatie Ramsarup. With the omission of a party's signature, this is neither an authentic act nor an act under private signature.
Another notable omission from this agreement is any reference to Double NRJ Trucking, Inc., a plaintiff in this case. Double NRJ was not a party to the agreement. Thus, Double NRJ has no right of action to enforce this agreement. See Gauthier v. Harmony Constr., LLC , 13-269 (La. App. 5 Cir. 10/9/13), 128 So.3d 314, 320 ("Parties to a valid contract have a right of action to enforce that contract."). Accordingly, upon notice of our own motion,[3] we sustain the peremptory exception of no right of action, and dismiss with prejudice the action of Double NRJ Trucking, Inc. against Mr. Johnson.
Although the district court did not find the purported authentic act to be void, it considered the evidence and testimony offered at trial to aid in interpreting the parties' agreement.[4] It is these findings of fact that we now review.
It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Evans v. Lungrin , 97-0541 (La. 2/6/98), 708 So.2d 731, 735. However, where one or more trial court legal errors interdict the fact-finding process, the manifest *1131 error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Id. When such a prejudicial error of law skews the trial court's finding of a material issue of fact, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo . Id.
Here, we find the district court committed two legal errors that interdicted the fact-finding process. First, the district court's judgment of June 20, 2017 includes the peculiar assertion that, following a full trial, the court found "issues of fact exist as to the agreement between the parties." Since "[t]he very purpose of a trial...is to decide the facts of a case," Selser v. Revol , 152 La. 447, 93 So. 675, 677 (1922), there should be no outstanding issues of fact following a full trial.
This peculiarity has also drawn our attention to the court's reasons for judgment. We recognize the well-settled rule that a trial court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment. Wooley v. Lucksinger , 09-571 (La. 4/1/11), 61 So.3d 507, 572. Nevertheless, a court of appeal may review the lower court's reasons "to gain insight" into the court's judgment. Id.
Our review of the district court's reasons reflect that its findings of fact were unduly influenced by suspicions of fraud. This was the court's second legal error. Fraud must be specially pled. See Blanchard v. Rental Serv. Corp., U.S.A. , 05-460 (La. App. 5 Cir. 1/17/06), 920 So.2d 911, 916 ("Fraud is an affirmative defense under La. C.C.P. art. 1005 and must be specially pled."). And fraud must be proven by a preponderance of the evidence. La. C.C. art. 1957 ; Lomont v. Myer-Bennett , 16-436 (La. App. 5 Cir. 12/14/16), 210 So.3d 435, 445, writ denied , 17-88 (La. 2/24/17), 216 So.3d 59. Absent any pleadings of fraud, we find the district court erred in considering fraud and permitting it to influence its factual findings.
Because we find the fact-finding process was interdicted by two legal errors, we should, if possible, conduct a de novo review and render judgment on the record. See Evans , supra . We find the record before us is apt for our de novo review.
Although no valid written agreement exists between the parties, the evidence and testimony in the record demonstrates that the parties intended to enter into an agreement. And that agreement, regardless of whether the parties intended it to be a sale or a lease of the vehicle, may be made orally. See La. C.C. art. 2681 ("A lease may be made orally or in writing"); 24 Dian Tooley-Knoblett & David Gruning, Louisiana Civil Law Treatise , Sales, § 6:3, at 302-03 (2012) ("[A]n oral sale of a registered movable is valid between the parties[.]").
An oral agreement in excess of five hundred dollars must be established "by at least one witness and other corroborating circumstances." La. C.C. art. 1846. The plaintiff himself may serve as the witness to establish the existence of the oral contract. Suire v. Lafayette City-Parish Consol. Gov't , 04-1459 (La. 4/12/05), 907 So.2d 37, 58. The other corroborating circumstances, however, must come from a source other than the plaintiff. Regel L. Bisso, L.L.C. v. Stortz , 11-25 (La. App. 5 Cir. 10/25/11), 77 So.3d 1033, 1036. These corroborating circumstances need only be general in nature, such that independent proof of every detail of the agreement is not required. See Suire , supra .
*1132 In the present case, though there was conflicting testimony on some of the agreement's terms, the record reflects that the parties agreed on others. Mr. Johnson and Ms. McFarland both testified they believed Mr. Johnson was buying the truck from Mr. Ramsarup for $70,000, for which he would make 92 weekly payments of $829.08 at a 20% interest rate. The bill of sale prepared by plaintiffs similarly reflects a price of $70,000 and weekly payments of $829.08. Mr. Ramsarup also testified that the weekly payment amount was $829.08. Insofar as the evidence reflects agreement on the price and weekly payment amount, we find the price is $70,000 and the weekly payment amount is $829.08.
It is on the annual interest rate and the number of payments where the record reflects disagreement. Mr. Ramsarup maintains the agreement was 192 payments, while Mr. Johnson and Ms. McFarland claim it was 92. Mr. Johnson and Ms. McFarland testified the annual interest rate was 20%, whereas plaintiffs offered no testimony or evidence on the interest rate. Yet, under Mr. Ramsarup's figures of 192 weekly payments of $829.08 at a price of $70,000, in an amortization schedule, the annual interest rate would be more than 51%. There is no evidence in the record supporting such an exorbitant rate. On the other hand, under Mr. Johnson's figures of 92 weekly payments of $829.08 at a price of $70,000 with an annual interest rate of 20%, a balance of more than $10,000 would remain outstanding at the time of the 92nd payment. This explains Mr. Johnson's additional thirteen payments, as reflected in his payment log. Because the figures offered by Mr. Johnson are corroborated by other evidence in the record, we find the parties agreed to 92 weekly payments and an annual interest rate of 20%.
We now consider whether the agreement was a sale or lease. Mr. Ramsarup contends the agreement was a lease to own, while Mr. Johnson contends it was a sale. "A contract by which a party binds himself to pay in installments a certain sum for the use of a thing, with the privilege of becoming owner thereof upon paying a further sum, for which he has not bound himself absolutely, is simply a lease with an option to purchase, and is not a sale." Bamma Leasing Co. v. Sec'y of Dep't of Revenue & Taxation , 93-881 (La. App. 5 Cir. 9/14/94), 646 So.2d 917, 920, writ denied , 94-2505 (La. 12/9/94), 648 So.2d 380. "An alleged lease, in which at the end of the term the lessee is to become owner of the thing leased, in consideration of the rent to be paid, is in fact a sale translative of the property from its very inception." Id.
Here, there is no suggestion in the record that Mr. Johnson was required to pay a further sum after completion of the installment payments to become owner of the vehicle. In fact, Mr. Ramsarup himself testified that upon completion of the payments, he would sign the title over to Mr. Johnson. This was a sale.
Accordingly, based upon our de novo review of the record, we conclude that Mr. Ramsarup agreed to sell to Mr. Johnson the vehicle (VIN# 2NPLLZOX16M891894) for a price of $70,000, for which Mr. Johnson would make 92 weekly payments of $829.08 at an annual interest rate of 20%. Mr. Johnson has satisfied his obligations under this agreement. Thus, although the district court's findings of fact were interdicted with legal errors, upon our de novo review, we conclude that the court did not err in denying with prejudice plaintiffs' petition for cancellation of lease and return of vehicle.
*1133 DECREE
For the foregoing reasons, we affirm the district court's June 20, 2017 judgment denying with prejudice plaintiffs' petition for cancellation of lease and return of vehicle. In addition, we sustain the peremptory exception of no right of action and dismiss with prejudice the action of Double NRJ Trucking, Inc. against Michael Johnson.
AFFIRMED; PEREMPTORY EXCEPTION SUSTAINED

24th JDC Docket No. 771-946, Div. H. On June 16, 2017, Mr. and Mrs. Ramsarup removed this case to the U.S. District Court for the Eastern District of Louisiana, No. 17-5792, where the proceedings are presently stayed.

The agreement was signed in 2015, but the handwritten month is illegible. Both the parties and the district court operate under the assumption that it was May 9, 2015. This date seems incongruent with the terms of the payment agreement that require the payments to commence on April 6, 2015, and with Mr. Johnson's first payment on April 7, 2015. However, given the degree of oral communication between the parties suggested by the record, it seems probable this written agreement was signed after an oral agreement had been confected and payments had started.

The peremptory exception of no right of action may be raised by the defendant or noticed by the court on its own motion, in either the trial or appellate court. La. C.C.P. art. 927(B) ; Howard v. Adm'rs of the Tulane Educ. Fund , 07-2224 (La. 7/1/08), 986 So.2d 47, 59.

Because we find the written agreement is void, we pretermit discussion of the district court's consideration of extrinsic evidence in interpreting the written agreement. See La. C.C. art. 1848 ; La. C.C. art. 2046.