JOHN S. COVINGTON, Judge.
In this suit for declaratory judgment, plaintiff, Elaine Hardin, alleged Irene R. Bowie donated to her a house and lot by an Act of Donation Inter Vivos executed on February 6, 1981 and formally accepted by her on the same day. From a judgment of the 18th Judicial District Court declaring the Act of Donation valid as to form and irrevocable, defendant, Mercedes Williams, timely filed a suspensive appeal. We reverse.
Defendant-appellant alleges five separate assignments of error by the Trial Judge. Only the first one need be stated herein, namely, the Trial Judge erred in finding that the Act of Donation was executed in accordance with C.C. art. 1536 and the Act of Donation was irrevocable.
The issue presented is whether an Act of Donation has been executed in compliance with C.C. art. 1536 if the notary public did not observe the donor and witnesses sign the Act.
The Trial Court stated in Written Reasons for Judgment, in pertinent part, as follows:
“... The evidence shows and this Court finds the following: That both witnesses ... were present in the room when Miss Bowie [the donor] signed the donation. ... [T]he notary public ... was not in the same room but was in close proximity to the donor and witnesses, so close that he could hear them talking and close enough that the individuals involved felt that he had witnessed the signatures. In fact, however, the notary did not witness each individual’s signature but was directly out of the doorway between the two rooms and was handed the document by Mr. Myles [the attorney who prepared the Act of Donation] as he walked out of the room in which the act was signed. ... [T]he only reason the notary was present at that office was to notarize the Act of Donation in question. Therefore, this Court finds that the donation was executed in accordance with Article 1536 and that said donation consequently is irrevocable.” (Emphasis ours.)
C.C. art. 1536 provides in pertinent part that “an act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property ... under the penalty of nullity”. C.C. art. *1304 2234 (now C.C. art. 1833) states, in pertinent part, that “the authentic act, as it relates to contracts, is that which has been executed before a notary public ... in the presence of two witnesses, ...”.
Whether the Act of Donation in this case is valid turns on the meaning of “before a notary public” and “in the presence of two witnesses.”
In Heyl v. Heyl, 445 So.2d 88 (La.App. 2nd Cir.1984), writ denied, 446 So.2d 1228 (La.1984), the Court rejected appellant’s contention that the matrimonial agreement was invalid as to form because “none of the signatories to the agreement could consistently affirm that they signed in the presence of each other”, reasoning that “All 2234 requires is that the notary and witnesses be present when each contracting party signs the act and that the notary and witnesses also sign the act”. 445 So.2d at 91.
In reversing both lower courts’ decisions rescinding the donations inter vivos of immovable property, the Supreme Court, per Watson, J., reasoned, in Tweedel v. Brasseaux, 433 So.2d 133, 137 (La.1983), in part, that:
“George T. Tweedel and his wife, Lillian, [donors] signed the instrument before two witnesses and a notary public as required by the article. The documents constitute authentic acts.” (Emphasis ours).
We observed in Chrysler Financial Corp. v. Louisiana Tax Commission, 251 So.2d 482 (La.App. 1st Cir.1971), that “mortgages notarized outside the presence of the parties or a subscribing witness, while not authentic in form, nevertheless avail as private acts and are valid as between the parties”. 251 So.2d at 487. (Emphasis ours).
Just as “a material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will”, Succession of Roussel, 373 So.2d 155, 157 (La.1979), a material deviation from the manner of execution prescribed by the co-dal article governing authentic acts will be fatal to the act which purports on its face to be authentic.
In Rittiner v. Sinclair, 374 So.2d 680 (La.App. 4th Cir.1979), on rehearing, the Court concluded that it erred in its opinion on original hearing in “requiring for the formal validity of an authentic act in Louisiana that the notary and witnesses sign the act at the time the person executing the act signs” and held, on rehearing “all that the law requires is that the notary and witnesses be present ... when each contracting party signs the act, C.C. 2234, and that notary and witnesses themselves also sign the act, although not necessarily at the time that any party signs it”. 374 So.2d at 685. (Emphasis supplied).
In the present case the notary public did not actually see the purported donor, whose identity was not known to the notary, or the two witnesses, sign the Act of Donation because he was not in the room where the donor, witnesses, and the draftsman of the Act were when the Act was signed; the notary was in an adjoining room and the draftsman of the Act brought the document to him and represented that the draftsman had witnessed the donor’s and witnesses’ signatures to the Act; only then did the notary sign the Act which contained the standard jurat, including the phrase “in the presence of James Gales, Jr. and Janice Myles, competent witnesses, who sign the act with the parties hereto, and me, Notary, after a reading of the whole”. The notary testified that he did not read the document but notarized it on the representations of the draftsman who brought the signed document to the adjoining room that the signatures had been affixed in the draftsman’s presence.
The law does not countenance the concept of a notary’s proxy. Yet that was the function the draftsman served and which the notary tacitly permitted him to serve.
We hold, as a matter of law, that unless the notary and attesting witnesses are able to visually observe each other and the donor during the execution of the act of donation inter vivos, the instrument is not entitled to the status of authentic act.
In the present case the purported donee, plaintiff, who formally accepted the *1305 donation, testified that the notary was able to see the donor as she signed. One of the witnesses to the Act of Donation testified that the notary was present in the room when she signed as a witness; James Gales, Jr., said the notary was not in the room when he signed as a witness; the notary said he was in an adjoining room and did not see either the witnesses or the donor sign the Act of Donation or plaintiff Hardin’s acceptance of the donation. On the facts as found by the District Judge the Act of Donation was not executed in accordance with C.C. art. 1536 because the requirements of an authentic act were not complied with, which requirements are set out in C.C. art. 2234 and the jurisprudence interpretive of it. Because the Act of Donation was not an authentic act it was revocable at will during the donor’s lifetime. Donor revoked the Act of Donation several weeks after it was executed by an authentic act executed in the presence of another notary and two witnesses who signed along with the appearer, Mrs. Bowie, while all were together in the same room.
Accordingly, the judgment of the District Court in favor of plaintiffs-appellees, Elaine Hardin and Geraldine Mason, declaring the Act of Donation dated February 6, 1981 valid and in proper legal form in compliance with C.C. art. 1536 and declaring Elaine Hardin and Geraldine Mason the lawful owners of all property given to them in the Act of Donation, is reversed.
The Act of Donation affecting the following described property is declared null:
1. One-half (Vk) undivided interest in a certain lot or parcel of land situated in Iberville Parish, Louisiana, on the east side of the Mississippi River, being Lot No. 13 of plan on record measuring one hundred five feet (105') front on Bayou Paul Lane, by a depth between parallel lines of one hundred ninety-six (196). Bounded front by Bayou Paul Lane, toward the Mississippi River by Lot No. 12, and on the opposite side by Lot No. 14. C.B. 23, E. 68.
2. One-half (Vk) undivided interest in a certain lot or parcel of land situated in Iberville Parish, Louisiana, on the east side of the Mississippi River, being Lot No. 13 of plan on record measuring one hundred five feet (105') front on Bayou Paul Lane, by a depth between parallel lines of one hundred ninety-six feet (196'). Bounded front by Bayou Paul Lane, toward the Mississippi River by Lot No. 12, and on the opposite side by Lot No. 14. C.B. 23, E. 68.
3.A certain lot or parcel of land in the town of Plaquemine, with all improvements thereon, especially a house and its contents subject to C.C. article 1528, being Lot No. 97 of Square No. 10 of that part of said town known as Haaseville, and measuring sixty feet (60'), by a depth between parallel lines of one hundred thirty-seven and five-tenths feet (137.5'). Bounded on the front or south by Hasse Street, east by Lot No. 96, west by Lot No. 98 and rear by Lot No. 92 of the plan of Haase-ville. C.B. 33, E. 280.
Plaintiffs-appellees are cast for all costs of these proceedings, both in the trial court and in this court. C.C.P. art. 2164.
REVERSED.